IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| SANDRA DANIEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. CV 01-B-2257-NE |
| ) | |
| SCIENCE APPLICATIONS ) | |
| INTERNATIONAL CORPORATION, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

This case is presently pending before the court on defendant's Motion for Summary Judgment. (Doc. 16.)[1] Plaintiff Sandra Daniel has sued her employer, defendant Science Applications International Corporation, alleging that defendant discriminated against her on the basis of her race and in retaliation for filing an EEOC charge. (Doc.1.) Upon consideration of the record, the submission of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment, (doc. 16), is due to be granted.

**I. STATEMENT OF FACTS**

Plaintiff works in defendant's Space Technologies Group. (Doc. 17, Ex. A at 8, Ex. C ¶ 2.) She has worked for defendant for over nine years, and she is classified as an Administrative Assistant I. (Doc. 17, Ex. A at 8; Ex. C ¶ 2.) Keith Smith, Operations

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.



Manager, has been her supervisor since October 2000. (*Id.* at 9.) Bill Gurley, defendant's Group Manager, is Smith's supervisor. (Doc. 28, Ex. 21 at 12.)

The Space Technologies Group provides NASA with "systems engineering, cost estimating, [and] management information systems . . . advanced programs . . . things in the future [like] replacements for the space shuttle [and] advanced engines." (*Id.* at 8-9.) Defendant is predominately a government support organization and its principal product is the labor of its employees. (*See* doc. 28, Ex. 21 at 41.) Therefore, it requires all its employees to complete time sheets. (*Id.* at 41-42.) On the time sheets, employees charge their time to either a government contract or to defendant as "overhead." (*Id.* at 42.)

In October 2000, Smith became Operations Manager for the Group after the former Operations Manager, Bill Rutledge, passed away. (*Id.* at 10-11.) Smith testified that when he became Operations Manager, "there was kind of a corporate push on making sure that [defendant's] overhead variances were reasonable, that [it was not] spending more of the nonbillable kind of hours than [it] had to." (*Id.* at 65.) Also, Smith's performance evaluation is based, in part, on the profitability of his Group. (*Id.* at 90.) As a result, Smith wanted to eliminate some of plaintiff's job duties that were charged to his "overhead" and not to a contract. (*Id.* at 65-66.) Smith testified that he determined plaintiff could "do everything that she needed to do for him in half [the] time." (*Id.* at 66.)

Smith told Human Resources employee Barbara Lamb to reduce plaintiff's hours from full-time to part-time. (*Id.* at 66; doc. 18, Ex. C ¶ 6.) Plaintiff's hours were reduced to part-time. (Doc. 17, Ex. C ¶ 13.) As a result, plaintiff lost pay and insurance benefits, and

2

she was not eligible to participate in defendant's 401(k) program. (Doc. 17, Ex. A at 52, 54; Ex. A, ex. 2 (time card for 2 weeks ending 02/02/01) and ex. 3.) During the time plaintiff was part-time, she did not have any unpaid insurance claims, and she had not been participating in the 401(k) program before Smith reduced her hours. (Doc. 17, Ex. A at 53, 54-55.)

After Smith told plaintiff, in early November 2000, that he was going to reduce her hours, plaintiff went to see Lamb about the reduction in her hours. (Doc. 17, Ex. A at 25; Ex. B ¶ 7; doc. 28, Ex. 23 ¶ 9.) Plaintiff asked Lamb for a full-time position, but Lamb could only offer her another part-time position to equal full-time hours. (Doc. 28, Ex. 23 ¶ 9.) Plaintiff told Lamb that she was not interested in adding another part-time job, but that she would be interested in full-time work outside the Group. (Doc. 17, Ex. C ¶ 12; doc. 17, Ex. A at 30.) No full-time Administrative Assistant I positions was available at that time. (Doc. 28, Ex. 23 ¶ 9.)

Plaintiff testified that she did not question Smith about the reduction in her hours because she "knew" that Smith had reduced her hours because of a "confrontation" they had, prior to October 2000, when Smith accused plaintiff of not taking a telephone message.

(Doc. 17, Ex. A at 33-34.)² Plaintiff testified that Smith was angry after the confrontation and that he was "cold" to her. (*Id.* at 37-38.)

In early November 2000, Lamb told plaintiff that there were no available full-time positions. (Doc. 28, Ex. 23 ¶ 9.) Two weeks later, defendant "hired" Denise Murphy, white, as an Administrative Assistant II. (Doc. 28, Ex. 8.) Murphy filled a vacancy, which defendant posted in July 2000. (Doc. 32, Ex. A ¶¶ 2, 4.) Plaintiff did not apply for that position. (*Id.* ¶ 3.) Murphy was selected to fill the vacancy in July 2000. (*Id.* ¶¶ 2, 4.) However, from July 2000 until defendant hired Murphy as its own employee in November 2000, Murphy performed the job duties while employed by a temporary agency. (*Id.* ¶¶ 5-6.)

---

²Plaintiff testified as follows:

Q. Did you ask [Smith] why you had been part-time?

A. No, sir, *I knew*.

Q. How did you know?

. . .

A. Because of the confrontation.

Q. What confrontation are you referring to?

A. He and I had had a confrontation before Mr. Rutledge passed away . . . .

. . .

A. He accused me of not taking a phone message . . . out in an open area. And I disagreed with him.

(Doc. 17, Ex. A at 33-34 (emphasis added).)

4

Therefore, in November 2000, when plaintiff spoke with Lamb, Murphy's position was not technically available. Murphy's "key responsibilities" were "general office duties in support of Group Contracts Director and support staff," and "[e]nsur[ing] steady flow of paperwork required in the department." (Doc. 28, Ex. 12.) Plaintiff contends her job duties prior to Rutledge's death were identical to these duties. (Doc. 28, Ex. 23 ¶¶ 10-11.) Murphy's starting salary was $32,448; plaintiff's full-time salary at that time was $27,000.75. (Doc. 28, Exs. 1, 11.)

Plaintiff was reduced to part-time effective January 2001, and she returned to full-time effective February 2001. (Doc. 17, Ex. C ¶ 13.) Plaintiff filed her EEOC charge on or about January 24, 2001. (Doc. 28, Ex. 18.) Smith testified that plaintiff was returned to full-time because Gurley had told Smith that he "needed someone to be there to answer the phones in case [Gurley] was looking for [Smith] or customers were looking for [Smith]," (*id.* at 67). Smith testified he was not aware that plaintiff had filed an EEOC charge at the time she was returned to full-time. (*Id.*)

Plaintiff contends that she is paid less than similarly-situated white employees. Defendant has a classified job system with established pay ranges. (*See* doc. 28, Exs. 1, 28, and Ex. 22 at 27.) The following table contains plaintiff's pay rate as compared to other Administrative Assistants I in Gurley's Group for the same period of time on their anniversary dates –

| EMPLOYEE | 1999 | 2000 | 2001 |
|---|---|---|---|
| Plaintiff (African-American) Hired: 12/93 | $24,465 (02/99)[3] | $27,000.75 (02/00) | $28,350.80 (02/01) |
| 032298[4] (African-American) Hired: 11/91 | $20,280 (03/99)[5] | $21,405 (03/00) | $22,605 (03/01) |
| 075291 (white) Hired: 09/98 | $24,000 (09/99)[6] | $28,125 (09/00) | $32,125 (09/01) |
| 032914 (white) Hired: 02/92 | $28,360 (07/99)[7] | $29,909 (07/00) | $31,109 (07/01) |
| 093211 (white) Hired: 05/00 | N/A | $27,560 (05/00)[8] | $29,250 (05/01) |
| 072019 (white) Hired: 05/98 | $27,300 (05/99)[9] | $28,927.50 (05/00) | $30,450 (05/01) |

Also, plaintiff contends that similarly-situated white employees were classified as Administrative Assistants II and were paid more for doing the same or similar work. As stated above, plaintiff testified that she did the same job as Murphy, who was classified as an Administrative Assistant II and Murphy was paid over $5,000 more per year than plaintiff.

---

[3] *See* doc. 28, Ex. A.

[4] From the records, it appears that employee no. 32298 performs the functions of a receptionist. (Doc. 28, Ex. 28, ex. F.)

[5] *See* doc. 28, Ex. 28, ex. E.

[6] *See* doc. 28, Ex. 28, ex. D.

[7] *See* doc. 28, Ex. 28, ex. C.

[8] *See* doc. 28, Ex. 28, ex. B. Employee number 093211 was hired in May 2000.

[9] *See* doc. 28, Ex. 28, ex. A.

6

Plaintiff also contends that defendant paid Leah Knight, who was classified as Administrative Assistant II, more for doing the same or similar work.

Leah Knight, who was supervised by Smith, performed different work. Smith testified:

> I don't know whether [Knight] was classified as an administrative assistant because she had special graphic type skills. She was more of a graphics artist, and I don't know whether she was classified as a graphic artist or as an administrative assistant. She did both.

(Doc. 28, Ex. 21 at 31.)

Plaintiff filed a charge of discrimination with the EEOC in January 2001. (Doc. 28, Ex. 18.) The EEOC issued a Notice of Right to Sue, and plaintiff timely filed the instant action.

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in her favor. *See id.* at 255. Nevertheless, the non-moving party need not be given the benefit of every inference but only of every ***reasonable*** inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### III. DISCUSSION

#### A. RACE DISCRIMINATION

Plaintiff alleges that defendant discriminated against her on the basis of her race, African-American, with regard to the reduction of her work hours, her non-selection for an Administrative Assistant II position, and her compensation. "When a plaintiff alleges disparate treatment, liability depends on whether the protected trait . . . actually motivated the employer's decision. That is, the [protected trait] must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome." *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000)(quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141 (2000)(quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)))(internal citations and quotations omitted).

In order to prevail on her claims, plaintiff must first make a prima facie showing of discrimination, which requires her to show (1) that she is a member of a protected group; (2) that defendant subjected her to an adverse employment action; (3) that she was qualified for her position; and (4) that similarly-situated employees outside the protected class were treated more favorably. *See Damon v. Fleming Supermarkets of Florida*, 196 F.3d 1354, 1359 (11th Cir. 1999)(citing *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir.1998)), *cert. denied* 529 U.S. 1109 (2000).

If plaintiff demonstrates a prima facie case, the burden shifts to defendant to articulate a non-discriminatory reason for the challenged decisions. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997)(citing *and Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981)). If defendant carries this burden of production, "the presumption of discrimination [created by plaintiff's prima facie showing] is eliminated, and the plaintiff must submit evidence showing that the articulated reason is pretextual. If pretext is established, summary judgment in favor of the defendant is generally inappropriate." *Walker v. Prudential Property & Cas. Ins. Co.*, 286 F.3d 1270, 1274 (11th Cir. 2002)(citing *Reeves*, 530 U.S. at 148; *Chapman*, 229 F.3d at 1025 n.11; *Combs*, 106 F.3d at 1538).

Plaintiff may establish that an articulated reason is a pretext for unlawful discrimination "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Carter v. City of Miami*, 870 F.2d 578, 584 (11th Cir. 1989)(quoting *Goldstein v. Manhattan Industries*, 758 F.2d 1435, 1445 (11th Cir.

9

1985)(citing *Burdine*, 450 U.S. at 256)). If a plaintiff chooses to establish pretext by showing that her employer's proffered reason is unworthy of credence, she must attack that reason "head on and rebut it." *Chapman*, 229 F.3d at 1030. She must offer evidence that "casts sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable fact finder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct.'" *Combs*, 106 F.3d at 1538 (quoting *Cooper-Houston v. Southern Ry. Co.*, 37 F.3d 603, 605 (11th Cir. 1994)).; *see also Damon*, 196 F.3d at 1361.

The "pretext analysis focuses on a narrow question: Would the proffered evidence allow a reasonable factfinder to conclude that the articulated reason for the decision was not the real reason?" *Walker*, 286 F.3d at 1276 (citations omitted).

**1. Reduction of Work Hours**

Plaintiff contends that defendant discriminated against her on the basis of her race when Smith reduced her work hours. The court assumes, for purposes of deciding defendant's Motion for Summary Judgment, that plaintiff can establish a prima facie case of discrimination with regard to the decision to reduce her work hours. However, plaintiff cannot establish that defendant's articulated reason for such decision is pretext for unlawful discrimination.

Defendant contends that Smith's decision to reduce plaintiff's hours was based on his desire to reduce his overhead expenses. Plaintiff testified that she "knew" Smith's decision to reduce her hours was based on animosity arising from a past "confrontation." Moreover,

she has not presented any evidence that defendant's articulated reason for the reduction of her hours – desire to reduce overhead – was not the real reason for the decision.

Therefore, defendant's Motion for Summary Judgment is due to be granted as to plaintiff's claim based on the reduction of her work hours.

### 2. Administrative Assistant II Position

Plaintiff contends that she was qualified for the Administrative Assistant II position awarded to Murphy, and that she should have been transferred to this vacant position before her hours were reduced.

In order to establish a prima facie case of discrimination with regard to her non-selection for the Administrative Assistant II position, plaintiff must establish that she applied for a vacant position. When a defendant posts available jobs, a plaintiff must establish that she applied for an available position in order to establish a prima facie case of discriminatory non-selection. *See Taylor v. Runyon*, 175 F.3d 861, 866 (11th Cir. 1999); *Jones v. Firestone Tire and Rubber Co., Inc.*, 977 F.2d 527, 533 (11th Cir. 1992). The undisputed evidence shows that plaintiff did not apply for this position when it was posted.

Because plaintiff did not apply when the opening was posted in July 2000, the court finds that plaintiff cannot establish a prima facie case of discrimination with regard to her claim of discriminatory non-selection for the Administrative Assistant II position awarded to Murphy. Therefore, defendant's Motion for Summary Judgment as to this claim is due to be granted.

### 3. Wages

Plaintiff contends that she was paid less than similarly-situated white employees performing similar duties. "In order to establish a prima-facie case of racial discrimination based on differences in salary, 'the plaintiff must show that [s]he was paid less than a member of a different race was paid for work requiring substantially the same responsibility.'" *Gibbons v. Auburn University at Montgomery*, 108 F. Supp. 2d 1311, 1318 (M.D. Ala. 2000)(quoting *Pittman v. Hattiesburg Municipal Separate School District*, 644 F.2d 1071, 1074 (5th Cir. 1981)). Viewing the evidence in the light most favorable to plaintiff, the court finds a reasonable jury could determine that plaintiff is the lowest paid Administrative Assistant I, with the exception of the Administrative Assistant I who performs the duties of a receptionist.[10]

However, defendant contends that plaintiff cannot establish a prima facie case of discrimination because her "supposed comparators did not have their pay determined by the [same] supervisors who determined [plaintiff's] pay." (Def. Mem. in Supp. of Mot. for Summ. J. at 14.)

The evidence shows that the salaries of Administrative Assistants were set by their immediate supervisors. In addition to the employees' immediate supervisors, Lamb, or

---

[10]Defendant argues that plaintiff is not the lowest paid Administrative Assistant I because plaintiff compares her salary with the salary of other Administrative Assistants I as of different times during the year. However, the court's review of the evidence demonstrates that plaintiff is the lowest paid Administrative Assistant I, with the exception of the receptionist, when salaries are compared as of the date of each employee's yearly evaluation.

12

another Human Resources employee, signed each salary recommendation for the relevant time period. Lamb testified that she reviewed the compensation of each employee as part of her duties in Human Resources as a check against discrimination, and defendant has established an objective system of job classifications based on the actual job duties and responsibilities, as well as established ranges of pay within each classification. (*See* doc. 28, Exs. 1, 28 and Ex. 22 at 27.)

The court notes that the range for the salary of Administrative Assistant I is quite broad, and that the pay of all alleged comparators, the Administrative Assistants I, were within this broad range. Although Lamb reviewed all pay decisions to insure that they were within certain limits, her involvement in the individual pay decisions of individual supervisors was very limited. As such, Lamb's review of the range of pay and her minimal involvement in the actual decision to set salaries "does not demonstrate the level of centralization necessary to justify treating all of [defendant's Administrative Assistants I as plaintiff's comparators.]" *See Meeks v. Computer Associates Intern.*, 15 F.3d 1013, 1017 (11th Cir. 1994).

The parties agree that the persons responsible for determining plaintiff's starting salary and subsequent raises were Rutledge and Smith, which were within the established range for the position of Administrative Assistant I. Lamb testified that she reviewed the individual pay decisions; however, she also testified that if she noticed an individual's pay was "significantly lower or significantly higher" than the range for his or her position, Lamb "would review [the employee's] file . . . and potentially talk to the manager to ensure that

13

[the employee is] in the correct [job] category." (Doc. 28, Ex. 22 at 27, *see also id.* at 36-37.) Lamb did not testify that she had authority to change an employee's pay, only that she would speak to the employee's manager, in this case Rutledge and, later, Smith. Therefore, despite Lamb's broad review of defendant's employees' salaries, she was involved in the pay decisions of individual managers or supervisors only to the extent that she might notify the individual manager or supervisor that a particular pay decision was out of the appropriate, normal range for the position. She did not have authority to set or change any employees' pay rate.

Plaintiff also compares her pay rate to that of Leah Knight, Administrative Assistant II. However, Smith testified that plaintiff's job duties and skills were not similar to Knight's. He testified that he used Knight "more as a graphics [sic] artist." (Doc. 28, Ex. 21 at 31.) Therefore, the court finds that Knight is not similarly situated to plaintiff for purposes of establishing a prima facie case of race discrimination with regard to pay.

Based on the foregoing, the court finds that plaintiff has not demonstrated that she was paid less than a similarly situated white employee; thus, she cannot establish a prima facie case of pay discrimination.

Therefore, defendant's Motion for Summary Judgment as to plaintiff's claim of pay discrimination will be granted.[11]

---

[11] The court informed the parties at oral argument that it intended to deny summary judgment as to plaintiff's pay claim. However, upon further review of the law and the parties submissions, the court finds, for the reasons set forth above, that there are no disputed issues of fact and that defendant is entitled to judgment as a matter of law as to plaintiff's pay claim.

## B. RETALIATION

In her Memorandum in Opposition to Defendant's Motion for Summary Judgment, plaintiff states that she is "challeng[ing] three *racially* discriminatory aspects of her employment." (Pl. Mem. in Opp. to Mot. for Summ. J. at 2 (emphasis added).) However, she does not raise any argument in support of her retaliation claim. (*Id.*; *see also* doc. 1 ¶ 21.) Therefore, the court deems plaintiff has abandoned this claim. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.), *cert. denied*, 516 U.S. 817 (1995). Defendant's Motion for Summary Judgment is due to be granted and plaintiff's retaliation claim is due to be dismissed.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and defendant is entitled to judgment as a matter of law. An order granting defendant's motion for summary judgment will be entered contemporaneously with this Memorandum Opinion.[12]

**DONE** this 31st day of March, 2004.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
United States District Judge

---

[12] As a final note, the litigants and their respective counsel have waited far too long for this decision. The court has no excuse and makes none for the delay in resolving this matter, knowing full well how difficult it is for the parties to make any informed choices about how to proceed when confronting the uncertainty of pending legal issues. It is the court's hope that no party has experienced undue expense or anxiety during this period of unjustifiable delay.